UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                            :
                                                  :     Chapter 7
**ODONATA LTD., d/b/a Cowlicks Japan,**           :
                                                  :     Case No. 22-10946 (MEW)
                           Debtor.                :
------------------------------------------------------------x

## DECISION REGARDING PURPORTED ESCROW ACCOUNT

Debtor Odonata Ltd. (**"Odonata" or "Debtor"**) was the owner and operator of a hair salon that operated under the name "Cowlicks Japan." It leased space from Baja 137 LLC (**"Baja"**). In 2021, Odonata and Baja engaged in negotiations regarding the possible modification and extension of the lease. The negotiations led to a proposed lease amendment that was executed by Odonata and that was sent to Baja for its signature. However, Baja refused to sign the amendment, saying that circumstances had changed and that Baja needed better terms.

Odonata sued in New York state court, contending that the draft lease amendment was a valid and enforceable contract or, alternatively, that Baja had engaged in fraud during the negotiations. Baja filed an answer with counterclaims to recover unpaid rent and professional fees. Baja also commenced a third-party action against Mr. Angel Nieves (Odonata's owner), who had guaranteed Odonata's lease obligations.

The state court dismissed Odonata's contract claims (leaving only its claim for fraud), and that dismissal was affirmed on appeal on June 28, 2022. Odonata filed a chapter 11 bankruptcy petition in this Court on July 6, 2022. Thereafter, the state court action was removed to the District Court and referred to this Court, where it was assigned Adversary Proceeding No. 22-01121.

In 2023, Odonata, Baja and Mr. Nieves agreed to hold a bifurcated trial to decide the merits of Odonata's fraud claim and of certain defenses to Baja's counterclaims that Mr. Nieves had

1

raised, with damages (if any) to be determined in a separate trial. I held a trial on May 2, 2023. On June 28, 2023, I issued a Decision, holding that Baja was entitled to judgment in its favor as to Odonata's fraud claims and also as to contentions by Mr. Nieves that the enforcement of the guaranty should be barred based on Baja's unclean hands and breach of an implied covenant of good faith. AP ECF No. 23.[1] Odonata then moved for the conversion of its chapter 11 case to chapter 7, and I granted that motion on July 7, 2023.

I issued a series of Orders after July 7, 2023 that attempted to schedule a resolution of Baja's remaining damage claims against Odonata and Mr. Nieves. Mr. Nieves filed a bankruptcy petition in the Eastern District of New York in November 2023, which stayed any further proceedings against him. NYEB Case No. 23-44154-NHL. I continued to issue Orders regarding the resolution of Baja's claims against Odonata, and Baja and the chapter 7 trustee eventually agreed to the allowance of a claim in favor of Baja and against Odonata in the amount of $521,010.23. However, Odonata's estate has no funds, even for the payment of remaining administrative claims, so in the absence of a cash infusion Baja will receive no distribution on its allowed unsecured claim.

In the midst of this activity, in October 2023, Baja filed motions alleging that Odonata and Mr. Nieves had wrongfully diverted funds that allegedly had been held in escrow for the benefit of Baja. Baja sought discovery as to what had happened and asked me to order that the funds be replenished for Baja's benefit. In later submissions, Baja asked me at various times to require other creditors to return the relevant funds so that they could be paid to Baja, and/or to impose sanctions against Odonata and/or its counsel.

---

[1] Citations to docket entries in Odonata's main bankruptcy case (Case No. 22-10946) are identified herein as "ECF No. __." Citations to docket entries in Adversary Proceeding 22-01121 are identified as "AP ECF No. __."

I have considered the submissions of the parties and the affirmations and documentary evidence they have provided. For the reasons stated below, I hold that no valid escrow was in place at the time Odonata filed its bankruptcy case. The funds that had previously been set aside for rent payments were held in Odonata's name and under Odonata's control, and they became property of Odonata's bankruptcy estate when the chapter 11 petition was filed. I therefore deny Baja's request for the restoration of the escrow, for the payment of any such funds to Baja, and/or for the recovery of the relevant funds from other creditors. Further, I hold that there are no grounds for the imposition of sanctions based on the conduct of Odonata and its counsel before this Court. Any request for sanctions based on conduct that allegedly occurred in the state courts should be directed to those courts, though any such request as to Odonata or as to Mr. Nieves would first require relief from the automatic stay in their respective bankruptcy cases.

## **Findings of Fact**

The parties disagree over the implications to be drawn from the relevant facts, but most of the underlying facts are not substantially disputed.

1. On July 8, 2021, Odonata filed suit in the Supreme Court, County of New York, asserting causes of action for specific performance, breach of contract, breach of an implied covenant of good faith and fair dealing, fraud/fraudulent inducement, and promissory estoppel. On October 27, 2021, Baja filed its answer and counterclaim to recover the rent balance owed to Baja, for treble damages relating to late fees, and for attorneys' fees.

2. In the state court, Odonata's counsel, Mr. Douglas J. Pick, filed an affirmation in which he stated that rents were being voluntarily tendered into a bank account that he described as an "Escrow Account." ECF No. 60 at 44; ECF No. 64 at 15. Mr. Pick attached an exhibit reflecting a "Citi Business Money Market" account into which funds were being deposited. ECF No. 60 at

3

124. The account statement was issued in the name of "Odonata Ltd. DBA Cowlicks Japan," and the listed address was Odonata's business address. *Id.* at 125. An accompanying Memorandum of Law also stated that monthly rent was being deposited in escrow. *Id.* at 37.

3. On February 7, 2022, the state court dismissed all the contract-based claims that Odonata had asserted against Baja, leaving only the claims for damages based on alleged fraud and fraudulent inducement.

4. Odonata filed an appeal from the dismissal order to the Appellate Division, First Department and asked for a stay of further proceedings in the trial court pending the hearing and determination of the appeal. ECF No. 70 at 7. The cover sheet for the motion to the appellate court stated that "Plaintiff is holding $56,253.33 in escrow (representing rent/use and occupancy amounts) and will continue to deposit $6,250 in escrow each month pending the outcome of appeal." ECF No. 60 at 393. Mr. Pick filed another affirmation in the appellate court confirming that Odonata "intends to continue to deposit certain sums into escrow each month (representing rent/use and occupancy payments) so as to secure Respondent in lieu of a bond or other undertaking." *Id.* at 398. The appellate court issued an order stating, among other things, that "[Odonata's] motion is granted on condition that plaintiff-appellant continues to deposit the monthly rent into the escrow account." ECF No. 70 at 7.

5. On June 28, 2022, the appellate court affirmed the state trial court's dismissal of Odonata's contract claims. ECF No. 56 at 42–6.

6. On July 6, 2022, Odonata filed its bankruptcy petition under chapter 11 of the Bankruptcy Code. In Odonata's list of assets it identified five bank accounts (three at Citibank, one at Bank of America and one at Mizuho Bank). ECF No. 1. The Bank of America account and the Mizuho account had zero balances, and two of the Citibank accounts had small balances

4

totaling $2,046.95. The third Citibank account held a balance of $75,000 and was described as "Citibank (Escrow)." *Id.* at 17.

7.  The Office of the United States Trustee for Region 2 has published "Operating Guidelines and Reporting Requirements for Chapter 11 Debtors and Trustees" (the "**UST Operating Guidelines**"). The UST Operating Guidelines required Odonata to close its existing bank accounts and to open new debtor-in-possession bank accounts immediately following the filing of the bankruptcy petition. U.S. Department of Justice, Office of the United States Trustee, Region 2, OPERATING GUIDELINES AND REPORTING REQUIREMENTS FOR DEBTORS IN POSSESSION AND TRUSTEES, at ¶ 5 (rev. Dec. 27, 2019); *In re MCM Natural Stone, Inc.*, 2022 Bankr. LEXIS 987, at *6–7, n. 7 (Bankr. W.D.N.Y. Apr. 8, 2022). Chapter 11 debtors often seek a waiver of this requirement, but Odonata did not ask for such a waiver.

8.  On July 6, 2022 (the date of the bankruptcy filing), Baja's counsel and Odonata's counsel exchanged emails regarding the funds that had been set aside for the potential payment of rent. Odonata's counsel stated as follows:

> I have spoken to the Debtor who advises that it will be looking for new premises to conduct business from and plans to be out of the premises by no later than year end. In the interim we will be paying the agreed upon use and occupancy as set forth in the unsigned Third Amendment to the Lease. However, before the check can be issued we will be opening a Debtor In Possession bank account ***into which all funds of the Debtor will be moved***.

ECF No. 58 at 8 (emphasis added).

9.  After the bankruptcy filing the pending state court action was removed to the United States District Court for the Southern District of New York, and was then transferred to this Court.

10. Baja's counsel sent additional inquiries to Odonata's counsel as to what was being done with the "rent you were putting in escrow." ECF No. 58 at 9. On August 16, 2022, Odonata's counsel responded as follows:

5

> ***Constitutes an asset of the bankruptcy case. It goes into the operating account. I never said that it would be escrowed after the bankruptcy filing.*** The rent (actually use and occupancy) is being paid monthly. We hope to have new premises shortly to move into and vacate the existing premises.

*Id.* (emphasis added).

11.     As a debtor, Odonata was required to file Monthly Operating Reports that showed, among other things, the cash that it held in bank accounts. Odonata's Monthly Operating Reports attached bank statements showing that, after the bankruptcy filing, all of Odonata's cash was held in one debtor-in-possession bank account at Wells Fargo Bank. *See, e.g.*, ECF No. 20. While the Citibank "escrow" account had been identified in the original list of Odonata's assets, it was never listed in any of the Monthly Operating Reports as an account that remained open. Nor was the purported "escrow" ever listed separately from Odonata's operating funds.

12.     The Small Business Administration ("**SBA**") contended, during Odonata's bankruptcy case, that the SBA had a perfected security interest in all of Odonata's assets, including the cash held by Odonata in its bank accounts. On August 24, 2022, Odonata filed a motion seeking approval of a stipulation in which Odonata agreed that the SBA held first priority and validly perfected security interests in all of Odonata's "cash and accounts receivable," and in which the SBA agreed that Odonata would be allowed to use its "cash collateral" in accordance with an agreed-upon budget. ECF No. 17. Baja received notice of this motion. ECF No. 18. No party objected, and the stipulation was "so ordered" on September 20, 2022. ECF No. 19.

13.     On May 2, 2023, I held a trial with respect to Odonata's fraud claims against Baja. At trial, Odonata contended that Baja had fraudulently induced Odonata to remain in the space it leased from Baja, and that Baja made material misrepresentations regarding Baja's willingness to negotiate lease amendments and the acceptability of some of the modified lease terms that Odonata had proposed. Odonata contended that as a result it had been fraudulently induced to delay its

6

pursuit of other leasing opportunities until a time when those other opportunities were no longer available. Based on the same alleged conduct, Mr. Nieves argued that Baja's claim under the guaranty should be barred by unclean hands and/or breach of the implied covenant of good faith and fair dealing, and that any damages owed by Baja to Odonata should be offset against any liability owed by Mr. Nieves under his guaranty.

14. After trial, I held that Odonata had failed to offer sufficient proof of its allegations of fraud. AP ECF No. 23. I also held that Mr. Nieves had not proved that Baja had engaged in any behavior that barred the enforcement of the guaranty. *Id.* On a separate issue, I found that there were no proven deficiencies in Baja's document productions that warranted sanctions. *Id.* Mr. Nieves's request for an offset to his guaranty obligations, based on the amount of any damages awarded in favor of Odonata on the fraud claim, was moot in light of my determination that Odonata had failed to prove that fraud occurred. *Id.*

15. On July 5, 2023, Odonata filed a motion to convert its chapter 11 case to a case under chapter 7. ECF No. 37. I granted the motion on July 7, 2023. ECF No. 38.

16. Baja subsequently asked that a trial be scheduled to determine the damages to which Baja was entitled. AP ECF No. 25. I conducted a pretrial conference on September 13, 2023, and directed Baja to prepare a calculation of Baja's purported damages and to provide the calculation to counsel for the chapter 7 trustee and counsel to Mr. Nieves to determine if there were disputes as to the amounts. AP ECF No. 27.

17. Counsel for Baja did not comply with the order to submit the calculations of damages to the parties, and Baja's counsel also failed to appear at a scheduled status conference on October 12, 2023. AP ECF No. 29.

18. On October 18, 2023, Baja filed a motion seeking an oral examination of Mr. Nieves pursuant to Bankruptcy Rule 2004 in order to trace funds that allegedly had been earmarked for Baja, and asking for the immediate replacement of funds that allegedly had been held in escrow for Baja. ECF No. 56. Baja also alleged that fraud and other wrongdoing had been committed in connection with prior statements about the funds and the use and dissipation of the funds. *Id.*

19. On November 14, 2023, Mr. Nieves filed a bankruptcy petition in the Eastern District of New York, which stayed any further proceedings against him in this Court. NYEB Case No. 23-44154-NHL.

20. On the morning of November 15, 2023, shortly before a scheduled hearing, Baja filed an additional declaration in support of its pending motion regarding the purported escrow account. ECF No. 60. Although the document was a reply in support of a prior motion, counsel to Baja denominated it as a "Motion to Punish for Contempt" when he filed it on the electronic docket. *Id.*

21. On November 15, 2023, counsel to the chapter 7 trustee in Odonata's case informed the Court that he had attempted to reach Baja's counsel to discuss damages issues but that he had received no response. I directed the parties to submit an order that adjourned the adversary proceeding conference one additional time. I further directed that a joint pretrial order was to be submitted if Baja could not reach agreement with the trustee, and that if Baja again failed to comply with my directions I would dismiss Baja's counterclaim for failure to prosecute. On November 16, 2023, I issued an Order that confirmed these directions. AP ECF No. 29.

22. I also heard arguments by the parties on November 15, 2023 as to the escrow issues Baja had raised. I asked the parties to make further submissions addressing two issues: (1) whether the pre-petition "escrow" arrangements constituted an enforceable and valid escrow agreement

8

under New York law and, if so, whether Odonata had any post-petition right to the use of those funds; and (2) even if there had been a valid escrow agreement, what if any remedies would be appropriate (whether in the form of contempt sanctions or otherwise) in light of Baja's failure to complain or to take action after having been given notice, in August 2022, that the funds in the purported escrow account would be deposited into Odonata's debtor-in-possession operating account and would no longer be held in escrow. ECF No. 61.

23. Baja filed papers in response to the Court's order on December 8, 2023. ECF No. 64. Baja argued that Odonata had repeatedly referred to the relevant funds as having been put in "escrow," that Odonata should be bound by that description, and that property held in escrow should not be regarded as property of Odonata's estate. *Id.* Baja also argued that it had never given affirmative written consent to transfer funds out of escrow, so that Baja's failure to take action after being told (in August 2022) that the funds were being transferred should make no difference. *Id.*

24. Odonata also filed papers on December 8, 2023. ECF No. 65. Odonata argued that the requirements for the valid formation of an escrow under New York law had not been met in this case because (among other reasons) there had been no irrevocable delivery of property to a third party, and also no agreement on specific terms that would specify the persons to whom the funds could be released and the circumstances that would govern such a release. *Id.* Odonata also argued that no relief would be proper because Baja had been informed in August 2022 that the funds would be transferred to Odonata's operating account to be used for general operating purposes, and Baja never opposed nor objected to that transfer. *Id.*

25. I continued to issue orders directing Baja either to reach agreement with the chapter 7 trustee as to the amount of an allowed claim or to prepare and submit a joint pretrial order that

9

would make the issues ready for trial. At a further hearing on December 12, 2023, I also provided the parties with a citation to a reported decision that appeared relevant to some of the escrow issues the parties had raised. *See Pixton v. B&B Plastics, Inc. (In re B&B Plastics, Inc.)*, 2005 Bankr. LEXIS 2130 (Bankr. S.D. Fla. 2005) ("**B&B Plastics**"). In *B&B Plastics*, a court had directed parties to deposit certain funds in escrow and the parties agreed to do so, but a bankruptcy court later held that no valid escrow had ever been established. I directed the parties to make additional submissions regarding the relevance of the *B&B Plastics* decision to the parties' disputes, and on December 14, 2023 I entered an Order that confirmed these directions. ECF No. 66.

26.  Odonata filed a supplemental submission on December 18, 2023 to address the points identified by the Court in the December 14, 2023 Order. ECF No. 67. Odonata noted that in *B&B Plastics* funds had actually been held by a third party in an attorney trust account, whereas in this case the relevant funds always remained in a bank account that was in Odonata's sole control and had never been transferred to a third party. Odonata further argued that the court's holding in *B&B Plastics* – that no valid escrow agreement existed because that there was no agreement or court order that specified the conditions upon which funds would be held or released – was applicable to this case as well, and precluded a finding that a valid escrow had been formed.

27.  For reasons that are not clear, Baja filed two supplemental submissions in response to the issues that the Court identified in its December 14, 2023 order. ECF Nos. 69, 70. In one submission, Baja argued that its case differed from *B&B Plastics* because (1) the escrow in this case was for "a service that Odonata used (rent and occupancy)," (2) Odonata had repeatedly informed the state courts that the relevant property was held in escrow, and (3) the escrow had been "voluntarily" established by Odonata in a lawsuit that Odonata itself had commenced. ECF No. 69. In a separate submission on December 20, 2023, Baja argued that this case also differed

10

from *B&B Plastics* because in this case there was both an agreement and a court order that required funds to be held in escrow.  ECF No. 70.  Baja also argued that Mr. Pick had allegedly made false statements for which he should be sanctioned.  *Id.*

28. Baja and its counsel continued to miss the deadlines that I had set for the resolution or trial of issues regarding its claims against Odonata.  However, at the request of the chapter 7 trustee I continued to extend the deadlines to see if an agreement could be reached.  AP ECF No. 32.  Ultimately, on January 18, 2024, counsel to Baja and to the chapter 7 trustee informed me that they had reached an agreement as to the amount of the allowed unsecured claim that Baja would hold against Odonata.  On that same date I informed the parties that I would take the escrow issues under submission.

29. On February 5, 2024, I entered an Order granting Baja an unsecured claim against Odonata in the amount of $521,010.23.  AP ECF No. 33.

## Discussion

The requirements for the creation of an enforceable escrow are typically governed by state law.  5 COLLIER ON BANKRUPTCY ¶ 541.09[1] (16th ed. 2023).  In this case, the purported escrow was allegedly created in New York among parties to a New York litigation.  The validity of the escrow therefore is governed by New York law.

It is clear that the relevant Citibank account was referred to frequently as an "escrow" or as an "escrow account" in communications among the parties as well as in papers filed by Odonata with the state courts.  However, referring to an arrangement as an "escrow" does not necessarily create a valid and enforceable escrow in New York.  New York courts have long recognized that the word "escrow" is "often used for a holding which has none of the effects which the law attributes to it."  *Farago v. Burke*, 262 N.Y. 229, 233 (July 11, 1933); *see also Chenkin v. Pub.*

11

*Adm'r*, 2017 NYLJ LEXIS 2970, *6 (Surr. Ct. N.Y. Co. Oct. 19, 2017) (reference to a husband's delivery of funds to the "escrow account" of the wife's attorney did not create an escrow agreement and did not confer upon the husband any residual interest in the funds); *Menkis v. Whitestone Sav. & Loan Ass'n*, 356 N.Y.S.2d. 485, 487 (Dist. Ct. 1974) ("Although no precise words are necessary to constitute an escrow, the converse is also true – calling a transaction an escrow does not make it one.").

The creation of a valid escrow under New York law requires four things: (a) an agreement as to the subject matter of the escrow, (b) the identification of a third-party depositary; (c) an irrevocable delivery of the subject matter of the escrow to the third party, subject to agreed terms governing the persons to whom, and the conditions upon which, the escrowed property may be released; and (d) the relinquishment of the escrowed property by the person who has agreed to put the property into escrow. *See Advanced Oxygen Therapy Inc. v. Orthoserve Inc.*, 572 F.Supp.3d 26, 36 (S.D.N.Y. 2021); *Nat'l Union Fire Ins. Co. Pittsburgh v. Proskauer Rose Goetz & Mendelsohn*, 634 N.Y.S.2d 609, 614 (N.Y. Sup. Ct. 1994). No formal written escrow agreement is needed, but there must be an agreed delivery of property to a third party, and a specification of the persons to whom the property may be released and the conditions of such release. *Menkis*, 356 N.Y.S.2d. 485 at 488.

When a company files for bankruptcy, the property that is included in the bankruptcy estate is governed by section 541 of the Bankruptcy Code. 11 U.S.C. § 541. If a valid escrow has been established prior to bankruptcy, and if the escrow is not subject to avoidance as either a preference or a fraudulent transfer, then the pre-bankruptcy transfer of property to the third party escrow agent is deemed to have removed the property from the Debtor's ownership. As a result, the property held in escrow becomes property of the bankruptcy estate only to the extent that the debtor has

12

retained contingent rights to the return of the property. *Musso v. N.Y. State Higher Educ. Servs. Corp. (In re Royal Bus. Sch. Inc.)*, 157 B.R. 932, 940–2 (Bankr. E.D.N.Y. 1993); *In re Urban Commons 2 West LLC*, 648 B.R. 530, 538 (Bankr. S.D.N.Y. 2023) ("Estate property is confined to the rights conferred upon the debtor by the escrow agreement, not property rights in the assets escrowed.") (Citing 5 COLLIER ON BANKRUPTCY ¶ 541.09[2] (16th ed. 2023)).  If a purported escrow is not a valid and enforceable escrow agreement under the relevant law, however, the relevant property is still property of the debtor and it becomes property of the debtor's bankruptcy estate after a bankruptcy case has been commenced.  11. U.S.C. § 541 (defining property of the estate as all the legal and equitable interest of the debtor in property as of the commencement of the case); *In re Urban Commons 2 West LLC*, 648 B.R. 530 at 538–41.

It is clear, in this case, that no valid escrow was established.

First, the *sine qua non* of a valid escrow agreement in New York is the delivery of property to a third party.  *See Advanced Oxygen Therapy Inc.*, 572 F.Supp.3d 26 at 26.  Here, Odonata at all times remained in possession and control of the relevant funds.  The arrangement that Odonata loosely described as an "escrow" was nothing of the kind.  Odonata merely set money aside in a bank account that at all times was in Odonata's ownership and under Odonata's control.  It may well have been the case that Odonata was setting aside the funds so that Odonata would be able to make payment to Baja if and when that became necessary.  However, there was no pre-bankruptcy transfer of property to the ownership and control of a third party, and the arrangement did not constitute an "escrow" that would have insulated the relevant funds from becoming part of Odonata's bankruptcy estate.

It appears that Baja was aware (or should have been aware) that the purported "escrow" account was just an account held by Odonata in its own name.  The bank statements for the relevant

13

account, copies of which were filed with the state courts, were not in the name of any third party and instead showed that the account that had been opened and was held by Odonata itself. Baja and its counsel may not have paid attention to the specifics of New York escrow law and the potential consequences of a failure to transfer funds to a third party, but if they had wanted the full protections of a valid "escrow" they should have paid attention to these details, especially as they were alerted to circumstances that should have put them on notice of a potential issue.

Second, New York law requires, as a condition to the formation of a valid escrow, that there be agreement as to the terms upon which a third party will hold property and the terms upon which the property will be released. *Id.* at 26. On this particular point, the decision in *B&B Plastics* involved facts that are similar to the facts in this case. In *B&B Plastics*, a court ordered the defendant (later the debtor) to put certain disputed royalty payments into an interest-bearing escrow account pending a trial, with the intention that the court would later direct the parties as to how to dispose of the escrowed property. The attorney for the defendant told the court that he would do so, but he never did. 2005 Bankr. LEXIS 2031, at 5. Instead, the funds remained in an attorney trust account, and when the court entered a final judgment, it did not address the disposition of the funds. *Id.* at 6. The defendant in *B&B Plastics* subsequently filed for bankruptcy, and the attorney for the debtor turned the funds over to the bankruptcy trustee.

The plaintiff in *B&B Plastics* filed an adversary proceeding asserting that the funds were not property of the estate because the money held in the attorney's trust account had been held in escrow. *Id.* at 11. Florida law (like New York law) requires, as a condition to a valid escrow, that there be an agreement as to the terms and conditions under which "escrowed" funds will be released. The bankruptcy court held that no agreement or court order had specified any such terms

14

in the *B&B Plastics* case, and therefore that no valid escrow had been established. As a result, it held that the disputed funds were property of the debtor's bankruptcy estate. *Id.* at 13.

Just as in *B&B Plastics, Inc.*, there was no written escrow agreement to evaluate in this case, and there were no agreed-upon terms upon which property would be held or upon which property would be released. The state appellate court issued an order that stated that monies should be put into the pre-existing "escrow account," ECF No. 70 at 7, but this is no different from the District Court order in *B&B Plastics* that directed the defendant to create an escrow account and to deposit disputed royalties into that escrow account. Here (as in *B&B Plastics*), there was never any agreement or order as to the specific terms and conditions under which escrowed property was to be held or could be released. The absence of such agreements meant there was no valid escrow in *B&B Plastics* even though, in that case, funds actually were held by a third party (the defendant's counsel). The similar absence of such terms in this case warrants a finding that no valid escrow was ever established.

Baja's efforts to distinguish the holding in *B&B Plastics* are unavailing. The purported escrow in *B&B Plastics* was governed by Florida law, but the relevant provision of Florida law (the requirement that there be an agreement that specifies the terms upon which property will be held, the persons to whom it may be released, and the conditions of such release) are also requirements of New York law. Baja argues that in this case the purported escrow was for "services" that Odonata used, but in *B&B Plastics* the escrow represented royalties that were allegedly due with respect to intellectual property that the debtor used. I fail to see how the distinction between disputed royalties and disputed rents makes any difference in analyzing the escrow issues. Baja also argues that this case differs from *B&B Plastics* because in this case there was both an agreement and a court order that required funds to be held in escrow. But that

15

purported distinction is simply wrong. In *B&B Plastics*, the court did order that an escrow account be established. The court's order, however, did not specify the terms and conditions upon which escrowed property would be held or could be released, and it was that absence that precluded a finding that a valid escrow had been established. Similarly, in *B&B Plastics* counsel agreed to establish an escrow. However, counsel's "agreement" went no further than that. Counsel even held the purportedly "escrowed" property in *B&B Plastics*, but that was not enough. No valid escrow was established in *B&B Plastics* because there was no court order or agreement that set forth "clear conditions that specified which party was entitled to the fund and what conditions would trigger the dispersal." 2005 Bankr. LEXIS 2031, at *30–1.

Baja also argues that Odonata should be bound by the words that Mr. Pick used to describe the arrangement, and that this alone should suffice to establish a valid "escrow." However, under the authorities cited above that result would be contrary to New York law. Baja also contends that "[w]e were told that the funds were held in escrow *voluntarily* and therefore not subject to the rules of escrow accounts." ECF No. 56 at 15 (emphasis in original). It is entirely unclear who supposedly made this representation as to whether the arrangement was subject to the normal rules of escrow accounts, but in any event I am at a loss to understand how Baja's counsel reasonably could have relied upon such a statement, even if such a statement had been made. The requirements for a valid escrow in New York are clear. I am unaware of any New York authority that would treat "voluntary" escrows differently from "involuntary" escrows. More importantly, I am not aware of any authorities under the Bankruptcy Code that would exempt property from being considered "property of the estate" based on alleged pre-bankruptcy statements as to the purported effectiveness of a "voluntary" escrow.

16

At the heart of Baja's arguments about Odonata's prior statements and alleged representations is the suggestion that Odonata should be estopped from denying that a valid escrow existed. Perhaps that argument might have some force if the issue here were one that solely affected Baja and Odonata. However, this bankruptcy case is not just a two-party proceeding. The issue of whether Odonata had parted with ownership of the funds in the relevant Citibank account pursuant to a valid escrow agreement, or whether instead those funds continued to be Odonata's property and therefore became property of Odonata's bankruptcy estate, affected all creditors in the Odonata case, including the SBA (as Odonata's secured creditor) and the administrative claimants who continued to provide goods and services to Odonata after the chapter 11 petition was filed. Those creditors had nothing to do with the way Odonata might have previously characterized the Citibank account or how Odonata characterized its deposits into that account.

In this bankruptcy case, the question whether the funds in the Citibank account became property of Odonata's estate depends on whether a valid escrow arrangement was actually in place that removed property from Odonata's ownership and control and thereby conferred, on Baja, rights in such property that were superior to the rights of Odonata's other creditors and administrative claimants. There is no legitimate basis on which I could hold that such a valid escrow was in place or that Baja held such rights in priority to other creditors. There was no valid escrow in place because (as Baja knew or should have known) the property was never put in the control of a third-party, and because there was no clear agreement or court order that specified the terms of the purported escrow. Similarly, Baja never asked for, and never was granted, any enforceable or perfected security interest in the funds. The funds were at all times Odonata's funds and they became part of Odonata's bankruptcy estate, where they were subject to the stipulated security interests of the SBA and where (with the SBA's consent) they were available for the

17

payment of administrative expenses.  Baja's rights to payment regarding pre-bankruptcy rents were no greater than the rights of other general unsecured creditors.

I also decline to impose sanctions on Odonata or on Odonata's counsel with respect to their conduct before this Court.  Baja suggests that I relied on the fact that monies were held in escrow and that I might have handled the matter differently if it had known otherwise.  ECF No. 56 at 6 ("The labeling of the escrow funds as 'available' skewed the opinions of this Court, the Chapter 11 Trustee, the U.S. Trustee and the creditors . . . .").  In fact, there was nothing about the manner in which I handled this bankruptcy case, or this adversary proceeding, that would have been altered if the escrow issues had arisen earlier.  It was quite clear to me that Odonata was making "use and occupancy" payments during the time it was in bankruptcy.  Whether a valid escrow existed that covered pre-bankruptcy rents was not an issue that had been raised, and if it had been raised, I would have made the same decision about that purported escrow that I am making now.

Baja further alleges that if it had known the funds were not being held in escrow, it would have "immediately" filed a motion before this Court to have the funds returned.  *Id.*  However, an "immediate" motion would have led to the same decision that I am currently rendering.  I also cannot help but note that if Baja did not realize in August 2022 that funds were no longer being held in escrow, it is only because Baja and its counsel were not paying proper attention.  First, Baja ought to have known all along that the arrangement itself did not constitute a proper escrow under New York law.  Second, Baja was explicitly told by Mr. Pick, in August 2022, that the funds that had previously been set aside were "an asset of the bankruptcy case," that the funds were being moved into Odonata's general operating account, and that Mr. Pick had "never said that it would be escrowed after the bankruptcy filing."  In short, Baja was told the funds would no longer be held for Baja itself and Baja did nothing in response, notwithstanding its current contention that it

18

allegedly would have howled in protest. Baja waited more than a year before filing a motion to compel the replacement of the allegedly escrowed funds, by which time the funds had already been used for the payment of administrative expenses.

Baja also alleges that sanctions should be imposed on Odonata's counsel because, during a prior court hearing, counsel had answered "no" when I asked if there had been a court order that directed Odonata to deposit funds into an escrow account. It was clear to me, in context, that Odonata's counsel was asserting that the deposit arrangement had been initially proposed by Odonata in the state court and had not originated with a state court order. I see nothing about counsel's statement that calls for the imposition of any sanctions.

Finally, Baja has asked me to impose sanctions for alleged violations of a state court's order and for alleged misrepresentations by Mr. Pick to the state courts. ECF Nos. 56, 60, 70. This is not the correct forum in which to seek such relief. I am not fully familiar with the circumstances under which prior statements were made to the state courts, or with how the state courts interpreted them, or with what the state courts contemplated or understood regarding the details of the "escrow" arrangements that Mr. Pick described, or (most importantly) if the state courts had any intentions or beliefs as to how the purported escrow would be treated if Odonata were later to file for bankruptcy. If Baja believes that Mr. Pick made statements to the state courts that should be grounds for sanctions, it is the state courts (not this Court) that can and should determine the extent to which any such statements were improper or misleading or otherwise subject to sanctions.[2] *See In re Brizinova*, 565 B.R. 488, 503 (Bankr. E.D.N.Y. 2017) (citing *Stiller*

---

[2] Odonata itself remains in bankruptcy as a chapter 7 debtor to which the automatic stay applies. 11 U.S.C. § 362(a). Mr. Nieves also is a debtor in a pending case. If Baja were to seek sanctions against Odonata or Mr. Nieves it would need first to obtain relief from the automatic stays in their bankruptcy cases. I note that Odonata has no funds with which to pay claims and therefore that relief would be pointless as to Odonata.

19

*v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963) (holding that claims based on violations of court orders are cognizable in the courts that issued the orders); *B&B Plastics,* 2005 Bankr. LEXIS 2130 at n. 4 ("The propriety of [Debtor's counsel] turning the funds over to the Trustee, and any sanctions for breach of the District Court's oral ruling . . . is an issue for the District Court, not this Court."); *Bessette v. Acvo Fin. Servs., Inc.*, 279 B.R. 442, 449 (D.R.I. 2002) ("When an individual is in contempt, he or she has been found in violation of a court order.  The court that issues the order that was violated is the court that determines whether a person is in contempt.").

## Conclusion

For the foregoing reasons, I hold that there was no valid escrow agreement in effect when the Debtor filed for bankruptcy and therefore that the funds were property of Odonata's estate. Accordingly, Baja's Motions (ECF Nos. 56, 60, 70) are denied, except that Baja's requests for the imposition of sanctions based on conduct that occurred in the state courts are denied without prejudice to such requests in the state courts (which requests would require relief from the automatic stay to the extent sanctions were sought against Odonata or against Mr. Nieves).  A separate Order shall be entered to this effect.

Dated: New York, New York
      February 22, 2024

                                            **s/Michael E. Wiles**
                                            Honorable Michael E. Wiles
                                            United States Bankruptcy Judge